## TITLE TO FEES PAID INTO THE TREASURY BY A COUNTY OFFICER SERVING UNDER AN UNCONSTITUTIONAL SALARY LAW.

### Common Pleas Court of Cuyahoga County.

STATE OF OHIO, EX REL MARCELLUS A. LANDER, v. CHARLES T. PRESTIEN ET AL.

### Decided, July 3, 1914.

*Office and Officer—Change in Judicial Opinion—Effect of, on Compensation of Public Officials—Waiver and Acquiescence—Mandamus Not Applicable to a Disputed Claim Which Has Never Been Allowed.*

1. Refusal to permit one to assert rights founded on a change in judicial opinion relating to the constitutionality of a legislative act, has been extended and held to apply to other cases than cases involving the obligation of contracts.
2. A county officer who served under an unconstitutional salary law, and who was paid the salary therein provided, subordinates being paid out of the county treasury and all fees earned and collected paid into the county treasury to the credit of the fee fund, can not be permitted almost ten years after his retirement from office to assert the invalidity of the salary act as the basis for recovery of fees so turned over and thereby place the county in a less favorable position than if the act had not been passed.
3. In such a case the doctrine of waiver and acquiescence must be held to apply, in that the said official waived all title to the fees paid by him into the treasury in excess of his salary and to have acquiesced in the receipt of these fees by the county and to their becoming blended with other funds of the county.
4. Moreover, were it possible to maintain such a claim, it would necessarily be by an action at law and not by mandamus.

*Griswold, White & Hadden,* for plaintiff.
*Cyrus Locher,* Prosecuting Attorney, contra.

ESTEP, J.

This branch of the court sustained a demurrer filed to the original petition in this action. The plaintiff filed an amended

petition.   The defendant answered, and the case was tried to the court upon its merits.

It appears that prior to the year 1896 the fee system as applied to the county offices had become such a source of profit to those holding the various county offices, particularly in the larger counties, that it became a matter of public discussion and resulted in legislative action upon the subject.   In Cuyahoga county several of the offices produced enormous returns by way of fees, and thus made the compensation attached to the various offices out of all proportion to the services rendered.   Accordingly salary laws were passed applicable to various counties. Among those passed, one applied to Miami county (92 O. L., 567), one to Pickaway county (92 O. L., 597), and one to Cuyahoga county (92 O. L., 602).   The object of these laws, and particularly the one applicable to Cuyahoga county, was to place these offices on a salary basis, and provided for a collection of the fees by the various officers to be paid by them into the county treasury of the county as public moneys belonging to it.   The officers thus being deprived of the fees, the fees which previously belonged to them, were provided by the law with salaries commensurate with the services rendered, and the purpose and clear intent of the law was to limit the sources of revenue to be derived by these officials to the salaries therein provided.

On the 9th day of March, 1897, the Supreme Court in the case of *Pearson* v. *Stephens,* 56 O. S., 126, held the law applicable to Miami county constitutional.   On the 24th day of June, 1902, the same court in the case of *State, ex rel Guilbert,* v. *Yates,* 66 O. S., 546, held the Pickaway county act unconstitutional.   On the 26th day of January, 1903, the Circuit Court of Cuyahoga county, in the case of *State, ex rel Nunn,* v. *Wright,* held the Cuyahoga county law unconstitutional.   The plaintiff in this action, Marcellus A. Lander, was, on the 2d day of November, 1897, elected treasurer of Cuyahoga county, taking his office September 5, 1898, and served for two successive terms, until September 1, 1902.

All the fees earned by him during his two terms of office were collected by him and paid into the treasury of the county, and credited to the fee fund created by the salary law; and his salary and the salaries of his office force were paid out of the county treasury. The total amount of fees paid by the said Lander into the treasury and credited to the fee fund was $182,135.97. The amount paid from the treasury to the said Lander and his deputies was $120,915.33, making an excess of the amount paid into the county treasury over the amount paid out in the sum of $61,220,64.

The plaintiff now seeks, by this action of mandamus, to be allowed this excess sum with interest from the time of the commencement of this action.

The plaintiff during his two terms of office treated this act as a constitutional act, even though on the 24th day of June, 1902, the Pickaway act was declared unconstitutional. The day after the Cuyahoga county law was declared unconstitutional, to-wit, January 27, 1903, there was an approximate balance to the credit of the fee fund of $83,906.16. On February 21, 1903, the sum of $80,000, by order of the commissioners, was transferred from the fee fund to the general fund of the county, and the balance remaining in said fund after this transfer, was used to defray the expenses of the insolvency court. The fund was largely a matter of bookkeeping. The money credited to this fund was mingled with the other moneys of the county, and was used to pay the general expenses of the county.

This was particularly so after the transfer of February 21, 1903. I have some doubt as to whether or not any action on the part of the commissioners was necessary to transfer the funds from the fee fund to the general fund. The act having been declared unconstitutional, and thus ceasing to have any legal effect, it failed in its entirety and the fee fund went out of existence with the remainder of the act. The moneys were already commingled with the other moneys of the county, and there it remained for use by the county in meeting the payment of its general expenses. The testimony discloses no ob-

jection on the part of Lander to the use of this money by the county in defraying its general expenses. The testimony does not show that he had any actual knowledge of the transfer; but it shows how little concerned he was in looking after this large sum of money to which he now lays claim. The testimony further discloses that plaintiff did not employ counsel in regard to his claim until the year 1909, and made no demand upon the county until the year 1911, and did not commence this action until February 3, 1912, almost ten years after he ceased to be treasurer of the county.

Should the plaintiff, upon this state of facts, now be permitted as a basis for recovery in this action, to assert the unconstitutionality of the salary act? Has his conduct in relation to this act been such that, to now permit the assertion of its invalidity would place the county in a less favorable position than if the act had not been passed?

In regard to the claim of counsel for defendant with reference to the effect to be given to a change in judicial opinion relating to the constitutional validity of legislative enactments, I agree with them in their claim that such change is not confined merely to the cases which hold that retrospective operation should not be given to a change in judicial opinion only when it would impair the obligation of contracts.

The doctrine that it is confined to the impairment of the obligations of contracts is laid down in the case of *Lewis* v. *Symmes,* 61 O. S., 471. The doctrine has been modified and extended, as appears from an examination of the following cases: *Cincinnati* v. *Taft,* 63 O. S., 141; *Cincinnati* v. *Trustees, etc.,* 66 O. S., 440; *Shoemaker* v. *Cincinnati,* 68 O. S., 603; *State* v. *Lewis,* 69 O. S., 202-206; *Thomas* v. *State,* 76 O. S., 341. I am of the opinion that the refusal to permit one to assert rights *founded upon a change in judicial opinion* relating to the unconstitutionality of a legislative act has been extended and held to apply to other cases than to cases involving the impairment of the obligation of contracts. I am further of the opinion that the plaintiff has so dealt with this act, and his conduct

during his terms of office, and for nearly ten years thereafter, was such that he should not now be permitted to assert this change in judicial opinion, for the reason that to permit him to do so would be placing the county in a less favorable position. It would be depriving the county of funds which the Supreme Court had held belonged to the county. The plaintiff had turned these fees over to the county, permitted it to mingle them with the other funds of the county, and remained silent for nearly nine years after his term of office had expired. These fees have long since been expended in the payment of obligations of the county; and to now allow this claim on the ground that this particular act was declared unconstitutional on the 23d day of January, 1903, after plaintiff's terms had expired, would not only be depriving the county of funds which when paid into the county treasury were legally paid there; but there being no funds now to meet this claim, it would place the county to the disadvantage of securing this sum from some source, even if necessary to resort to the method of raising it by taxation.

If I am wrong in this claim, I am of the opinion that the doctrine laid down in the Vail case, 84 O. S., 399, is applicable. H. L. Vail, who was clerk of the courts of Cuyahoga county, and operated his office a portion of the time under the salary act, sought in this action to *retain* fees which *accrued before but were not paid* until *after* said act had been declared unconstitutional. He was not attempting to secure from the county fees which had been paid by him into the county treasury under this act, but was simply trying to retain fees which came into his possession after the act had been declared invalid. He was permitted to retain these fees, and this case was undoubtedly rightly determined. If the plaintiff in this action, in view of the decision of the Stephens case, and upon a consideration of his entire conduct during his terms of office and thereafter in relation to these fees, can now claim the excess fees by reason of the unconstitutionality of this act, he can also recover all the fees collected by him and paid by him into the treasury. The county could also reclaim from him and his deputies the money.

paid to him and his deputies by way of salaries and compensation. The mere statement of this claim shows to what conclusions the logic of plaintiff's present claim would lead.

The doctrine laid down in the Vail case to the effect that a party can· not assert that an act of the General Assembly is unconstitutional when his conduct has been such that to permit the assertion would place his adversary in a less favorable position than he would have occupied if the act had not been passed, is, in my opinion, applicable to the case at bar. While there is language in this opinion used by Shauck, J., which is *obiter*, and which may be used in furthering the claims of each side of this controversy, yet I am constrained to believe that Judge Shauck, in a case like the one at bar, undertook to make the doctrines of waiver and acquiescence applicable. As I have already stated, Vail was not attempting to get from the county anything he had paid to it. In Vail's attempt to retain funds paid to him after said·act had been declared unconstitutional, Shauck, J., said that the doctrine of waiver and acquiescence did not apply. He said:

"What he waived was his right to the costs above salary during his second incumbency and until the salary act was declared unconstitutional, and his acquiescence was in the receipt of such surplus fees during the same time by the county. The fees to which he thus waived his right thereby became blended with the funds of the county, but as to those fees which· are the subject of the controversy, the county occupies precisely the same position it would have occupied if the unconstitutional act had not been passed or the defendant had challenged it immediately upon its passage."

Plaintiff's counsel in their brief claim that the language of Judge Shauck, in reference to waiver and acquiescence, relates to the sum of $50,000 which was taken from the fee fund and turned over to the general fund of the county. I have carefully read the record in the Vail case and also the briefs of counsel, and I am unable to find anything which will support this contention. Judge Shauck states the law to be, what I have under-

taken to make appear in this opinion, that Lander waived the fees paid into the treasury in excess of his salary, and acquiesced. in the receipt of these fees by the county and in permitting them to be blended with the other funds of the county.

I am, therefore, of the opinion that the plaintiff, by treating this act, during his two terms as treasurer, as a constitutional act, as he was clearly justified in doing by reason of the holding of the Supreme Court in the Stephens case; by his payment of all the fees collected by him over to the county thereby investing it with title to these funds; by his receipt of his salary provided by the act during his two terms of office and requesting that his deputies and other assistants be paid out of the county treasury; by his retirement from office without making any demand for these excess fees; by his acquiescence in the disbursement of the balance of the fee fund to defray the general expenses of the county; by his standing by for nearly nine years after his terms of office had expired before making any demand for the excess fees, prevents him from now asserting the change in judicial opinion relating to the constitutionality of this act so as to make the change retroactive; that he has so dealt with said act that he can not now be permitted to assert its invalidity as a basis for recovery, and also that the plaintiff has waived his right to recover those excess fees, and has acquiesced in the receipt of them by the county.

2. Having held that plaintiff is not entitled to recover on the grounds above set out, it is probably unnecessary for me to consider any of the other matters so ably discussed in the briefs submitted.

I desire, however, after carefully considering the able brief filed by counsel for plaintiff, to again say that in my opinion the plaintiff can not resort to an action in mandamus to recover these excess fees from the county.

I agree with the doctrine of the cases which hold that, where it is only a question *of the method of payment,* and where an officer refuses to draw a warrant when it is *clearly his legal duty to do so,* the remedy in mandamus is applicable, is in fact the

proper remedy. It is also the remedy where the claim can only be paid out of a certain fund (27 O. S., 96). It is clear under the proof in the case at bar that the fee fund has gone out of existence and that the funds were long since paid out in defraying the general expenses of the county. If plaintiff's claim were allowed, it would have to be paid in the same manner other claims against the county are paid.

Plaintiff's counsel, at page 13 of their brief, following the reasoning of the case in 27 O. S., 96, say:

"The money which Mr. Lander is entitled to is not money out of the general fund of the county which has been raised by the ordinary methods of taxation; the money which Mr. Lander is entitled to is his own money raised by the collection of fees as authorized by the statutes in Ohio. He is not entitled to county money generally; he is only entitled to this fee money. If he were to sue the county direct, and recover a judgment, it would need to be paid out of these fees."

In the light of the proof in the case, I think I am correct in stating that this position was entirely abandoned by the plaintiff. The proof disclosed that *these fees* had been expended by the county years before this action was commenced, and the fund itself, if it had not gone out of existence when the law was held invalid, had ceased to exist as a matter of bookkeeping. There is no longer any so-called fee fund.

I take it, therefore, that if the county owes plaintiff the sum he seeks to recover, it must be paid out of the general funds of the county; or if there is not enough money in the general fund, it would have to be met in some other way by the county.

The plaintiff simply asserts a claim for money, against the county, arising out of his occupancy of the position of treasurer of the county; and while the amount of the claim is undisputed, the county, by its proper officials, denies all legal liability. In other words. the plaintiff claims that the county owes him the sum of $61,220.64, being the excess fees paid by him to the county during his terms as treasurer of the county under the salary law. The county admits that the amount of the excess

fees is correct, but denies that it owes him any sum whatsoever. It denies all legal liability.

If this claim can be enforced by proceedings in mandamus, then it is clear that any claim for money had and received against the county can be enforced by this remedy, and actions at law against the county upon money demands will be entirely superseded. If this claim of plaintiff had been allowed by the proper authority, the payment of it would be clearly a ministerial duty, and mandamus would be the proper remedy.

The claim of plaintiff, however, has never been allowed by the proper officials. On the contrary, it has always been a disputed claim, and is one which, in my judgment, can only be enforced by an action at law. Section 2460 of the Code provides how claims against the county are allowed and paid. This, as I have held, is a claim for money against the county. This claim does not come within any of the provisions of this section. This statute also provides that no public money shall be disbursed by the county commissioners, or any of them, but shall be disbursed by the county treasurer, upon the warrant of the county auditor, specifying the name of the party entitled thereto, on what account, *and upon whose* allowance, if not fixed by law.

In conclusion I will say that I have been unable to distinguish plaintiff's claim from any ordinary claim for money which might be asserted against the county. It is a disputed claim. It has never been allowed by the county commissioners nor by any other officials. It is not a claim fixed by law, and has never been allowed by any person or tribunal. This being true, the plaintiff should be required to pursue his remedy at law, provided he has any such remedy.

Entertaining these views, I find in favor of the defendants, and dismiss plaintiff's petition.